# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JEREMY A. BRECKENRIDGE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 16-cv-0888-MJR-SCW |
| | ) |
| VENERIO SANTOS, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

I. INTRODUCTION

In August 2016, Jeremy Breckenridge filed a pro se civil rights complaint in this Court under 42 U.S.C. 1983, against two Defendants – a physician (Venerio Santos) and an administrator (Lisa Krebs) at Centralia Correctional Center, where he was confined. On threshold review of the complaint under 28 U.S.C. 1915A the next month, the undersigned District Judge dismissed certain claims and allowed other claims to proceed (Doc. 8). Specifically, a claim for deliberate indifference to serious medical needs was allowed to go forward against Defendant Santos. Defendant Krebs was dismissed from the lawsuit with prejudice. Claims for medical malpractice were dismissed without prejudice, because Breckenridge had not complied with the affidavit or healthcare professional report requirements of 735 ILCS 5/2-622 (*see* Doc. 8, pp. 8-9).

The central allegations of the deliberate indifference claim which went forward are as follows. Breckenridge (Plaintiff) has a documented allergy to the drug "Cipro." Despite being aware of that fact, on December 29, 2015, Dr. Santos prescribed Plaintiff the medication Bactrim, when Plaintiff presented with a urinary tract infection. Bactrim is in the same class of drugs as Cipro, and it caused a similar allergic reaction in Plaintiff. After Plaintiff returned to the healthcare unit and advised Dr. Santos that he was experiencing allergic reactions, Santos gave Plaintiff Benadryl and sent him back to his cell. Plaintiff's symptoms worsened there (e.g., swelling, shaking, skin turning dark red). Ultimately, Plaintiff was admitted to a local hospital, diagnosed with Stevens-Johnson syndrome, and stayed four and one-half days while his skin blistered. Plaintiff claims that Dr. Santos was deliberately indifferent to Plaintiff's serious medical condition and delayed medical treatment when Plaintiff presented with symptoms of Stevens-Johnson syndrome.[1]

Defendant Santos answered in November 2016, raising the affirmative defense of failure to exhaust administrative remedies (Doc. 13, p. 13). A trial practice scheduling order was entered, and the case was set for trial on January 7, 2019 (*see* Docs. 18-19).

---

[1] Stevens-Johnson is a rare, serious disorder of the skin and mucous membranes which usually occurs as a reaction to medication or an infection. ***See** Mayo Clinic*, "Stevens-Johnson Syndrome," www.mayoclinic.org/diseases-conditions/stevens-johnson-syndrome/symptoms-causes/syc-20355936, visited 1/23/2018.

On March 8, 2017, Santos moved for summary judgment on the ground of lack of exhaustion (Docs. 22-23). Plaintiff timely responded thereto (Doc. 26).

The Honorable Stephen C. Williams, United States Magistrate Judge, held an evidentiary hearing on the motion on November 27, 2017 (Docs. 32, 34). Now before the Court is a Report and Recommendation ("R&R" – Doc. 33) issued by Judge Williams, recommending that the undersigned District Judge grant Santos' summary judgment motion. Plaintiff objected thereto on December 11, 2017 (Doc. 37), and Defendant Santos responded on December 29, 2017 (Doc. 39).

Timely objections having been filed, the undersigned District Judge must review *de novo* the portion of the R&R to which Plaintiff specifically objected. **28 U.S.C. 636(b)(1); FED. R. CIV. P. 72(b); SOUTHERN DIST. OF ILLINOIS LOCAL RULE 73.1(b).** The undersigned can accept, reject, or modify Judge Williams' recommendations, receive further evidence, or recommit the matter to Judge Williams with instructions. *Id.* For the reasons stated below, the Court adopts Judge Williams' R&R in its entirety. Analysis begins with the standards governing analysis of Defendant's motion.

II.  APPLICABLE LEGAL STANDARDS

    A.  <u>Summary Judgment</u>

Summary judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." ***Dynegy Mktg. & Trade v. Multi Corp.*, 648**

F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted), *citing* FED. R. CIV. P. 56(a). *See also Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005).

The party seeking summary judgment bears the initial burden of showing -- based on the pleadings, affidavits, and/or information obtained via discovery -- the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986), *quoting* FED R. CIV. P. 56(e)(2). A fact is material if it is outcome determinative under applicable law. *Anderson*, 477 U.S. at 248; *Ballance v. City of Springfield, Ill. Police Department*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Generally a district court's role on summary judgment is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter. It is only to determine whether a general issue of triable fact exists. *Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). A slightly different standard applies to summary judgment on the issue of exhaustion.

A motion for summary judgment based on failure to exhaust administrative

remedies often involves a hearing to determine contested issues regarding exhaustion, and the judge may make limited findings of fact at that time. *Pavey v. Conley*, **544 F.3d 739, 742 (7th Cir. 2008).** The case proceeds on the merits only after any contested issue of exhaustion is resolved. *Pavey***, 544 F.3d at 742.** In the case at bar, Judge Williams conducted a hearing in light of contested factual issues (*see* Doc. 33, p. 4).

B.  **Exhaustion Under the PLRA**

Lawsuits brought by prisoners are governed by the Prison Litigation Reform Act (PLRA), 42 U.S.C 1997e. The PLRA requires that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until … administrative remedies as are available are exhausted." **42 U.S.C. 1997e(a).**

Exhaustion is a condition precedent to suit in federal court, so the inmate must exhaust before he commences his federal litigation; he cannot exhaust *while* his lawsuit is pending. *See Perez v. Wisconsin Department of Corrections***, 182 F.3d 532, 535 (7th Cir. 1999);** *Dixon v. Page***, 291 F.3d 485, 488 (7th Cir. 2002).** If the inmate fails to exhaust before filing suit in federal court, the district court must dismiss the suit. *See Jones v. Bock,* **549 U.S. 199, 223 (2007);** *Burrell v. Powers***, 431 F.3d 282, 284-85 (7th Cir. 2005).**[2]

---

[2] Although *dismissal* is the procedural step the district court takes if a plaintiff failed to exhaust prior to filing suit, the issue of exhaustion most often is raised via summary judgment motion, so that the Court can consider evidence "outside the pleadings," such as affidavits, grievances, responses, appeals, and related documentation. *See* **FED. R. CIV. P. 12(d).**

The Court of Appeals for the Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006)** (**'This circuit has taken a strict compliance approach to exhaustion").** "Unless a prisoner completes the administrative process by following rules the state has established for that process, exhaustion has not occurred." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2002).** This includes the filing of "complaints and appeals in the place, and at the time, the prison's rules require." *Id*. **at 1025.** If the prisoner fails to comply with the established procedures, including time restraints, the court may not consider the claims. *Pavey v. Conley*, **663 F.3d 899, 903 (7th Cir. 2011).**

The purpose of the exhaustion requirement is two-fold. First, it gives the prison officials the chance to address the prisoner's claims internally, before any litigation becomes necessary. *Kaba v. Stepp*, **458 F.3d 678, 684 (7th Cir. 2006);** *Woodford v. Ngo*, **548 U.S. 81, 89-90 (2006).** Second, it "seeks to reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, **534 U.S. 516, 524 (2002).** *See also Booth v. Churner*, **532 U.S. 731, 737 (2001).**

Because exhaustion is a prerequisite to filing a suit, a prisoner must wait to commence litigation until he has completed the established process; he may not file in anticipation of administrative remedies soon being exhausted. *Perez*, **182 F.3d at 535,** *citing* **42 U.S.C 1997e(a);** *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** A suit filed

prior to exhaustion of available remedies will be dismissed even if the remedies become exhausted while the suit is pending. *Perez*, **182 F.3d at 535.**³

The exhaustion requirement is an affirmative defense, on which defendants bear the burden of proof. *Pavey v. Conley,* **663 F.3d 899, 903 (7th Cir. 2011).** "[D]ebatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, **544 F.3d 739, 740-41 (7th Cir. 2008).** Where failure to exhaust has been raised as an affirmative defense (i.e., is contested, as here), the district court should follow this sequence (*id., * **544 F.3d at 742)**:

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate.
>
> (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over.
>
> (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial,

---

³   Exhaustion-based dismissals under the PLRA must be *without* prejudice, even if exhausting now may prove to be impossible. *See, e.g., Fluker v. County of Kankakee,* **741 F.3d 787, 791-92 (7th Cir. 2013),** *citing Ford v. Johnson,* **362 F.3d 395, 400-01 (7th Cir. 2004).**

the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

The PLRA's exhaustion requirement is dependent upon the procedures established by the particular state in which the prison is located. **Jones, 549 U.S. at 218.** Plaintiff was confined at Centralia Correctional Center in Centralia, Illinois, when he filed this suit (and at the time of the events he alleges in the suit). Centralia -- like the institution where he is currently confined, Vienna Correctional Center -- is within the Illinois Department of Corrections (IDOC).

### C. Exhaustion Under Illinois Law

As an IDOC inmate, Plaintiff was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders to properly exhaust his claims. **20 Ill. Admin. Code 504.800,** *et seq*. The grievance procedures first require inmates to speak with their Counselor about the issue or problem. **20 Ill. Admin. Code 504.810(a).** If the Counselor does not resolve the issue, the inmate must file a grievance within sixty days of the events or occurrence with the Grievance Officer. *Id.*

The grievance form must:

contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code 504.810(b).**

"The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer ... [who] shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code 504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the ARB.

More specifically: "If after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code 504.850(a).**

"The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code 504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code 504.850(f).**

The grievance procedures also allow for an inmate to file an emergency grievance. To file an emergency grievance, the inmate must forward the grievance

directly to the Chief Administrative Officer (CAO) who may determine that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code 504.840(a).**

If an inmate forwards the grievance to the CAO as an emergency grievance, the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 Ill. Admin. Code 504.840(b).** Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code 504.850(g).** A final decision of the ARB will exhaust the grievance requirement.

In certain circumstances, a prisoner may exhaust his remedies by filing a grievance directly with the ARB. **20 Ill. Adm. Code 504.870**. Those circumstances include grievances addressing (1) placement in protective custody, (2) involuntary administration of psychotropic medication, (3) decisions regarding disciplinary proceedings that took place at an institution other than where the inmate currently resides, and (4) all other issues, with the exception of personal property issues, that occurred at a previous institution. *Id.*

### III. ANALYSIS

Plaintiff filed one grievance about his allergic reaction to Bactrim and development of Stevens-Johnson syndrome. That grievance was filed January 31, 2016. The question is whether Plaintiff fully exhausted that grievance prior to filing this lawsuit. The answer is no.

The record before the Court establishes the following as to the 1/31/16 grievance. The grievance was received by Plaintiff's counselor (B. Brady) on February 2, 2016 (Doc. 23-1, p. 8). The counselor responded to the grievance on February 5, 2016, stating that per the Health Care Unit Administrator, Plaintiff was treated appropriately with Benadryl and, when this did not provide relief, appropriately sent to the hospital (*id.*). The next proper step in the exhaustion process would be for Plaintiff to submit the grievance to a grievance officer for review, and if unsatisfied, to the Chief Administrative Officer or CAO at Centralia. That step was skipped here. Instead, Plaintiff sent this grievance directly to the ARB.

The ARB received the grievance on February 22, 2016 (*id.*). Sarah Johnson of the ARB reviewed the grievance on March 23, 2016 and denied it on procedural grounds, because it failed to include the grievance officer or CAO's response. The ARB returned the grievance to Plaintiff with instructions to resubmit it with a copy of the necessary responses, "including the Grievance Officer's and Chief Administrative Officer's response" (Doc. 23-1, p. 7). On April 20, 2016, a counselor (Debra Zelasko) again sent

the ARB's response to Plaintiff, with a reminder that he needed to provide a copy of the grievance officer and CAO's responses, "if timely" (Doc. 23-3, p. 2). Because Plaintiff did not resubmit his grievance with those responses, the ARB did not proceed to a merits-based decision on the grievance.

So, the issue is whether Plaintiff (a) correctly submitted the grievance regarding Bactrim/Stevens-Johnson *at the institutional level* or (b) skipped that step and submitted it directly to the ARB. Cumulative counseling summaries, grievances, and affidavits were provided with Defendant Santos' motion. Judge Williams directed defense counsel also to submit all grievance logs, to determine whether Plaintiff ever submitted the 1/31/16 grievance to the grievance officer at Centralia Correctional Center.

At the November 2017 hearing, Plaintiff testified that he *did* submit the grievance he received from his counselor in the box to be sent to the grievance officer, and it came back to him in the mail without any response. Plaintiff said he placed the grievance right back in the box a second time and again received it back with no response on February 7, 2016. Plaintiff testified that he submitted the grievance a third time on February 7, 2016 (with a request slip to the warden) but got it back in the mail with no response on February 10, 2016.[4] Judge Williams found this testimony *not* credible (Doc. 33, pp. 10-11).

---

4     If this testimony were credited, Plaintiff's attempts to exhaust would be deemed thwarted, and he could proceed with this lawsuit.

As Judge Williams noted in the R&R (after reviewing both the redacted and unredacted grievance logs), there is no indication that Plaintiff's January 31, 2016 grievance was ever received by a grievance officer – either as a regular grievance or as an emergency grievance – anytime in January 2016 all the way up to and including April 1, 2016. There are no notes in the counseling summaries indicating that Plaintiff ever *asked* anyone about the lack of response to his grievance. Nor did Plaintiff say anything to the ARB about the fact he allegedly had tried three times without success to use the proper channels and route his grievance to a grievance officer. Furthermore, Plaintiff's complaint discusses his handling of the grievance, suggesting it was submitted *directly to the ARB*. Nowhere does the complaint say that Plaintiff tried (and was blocked in his efforts) to submit his grievance to a grievance officer (*see, e.g.*, Doc. 1, p. 4).

Only after Defendant Santos moved for summary judgment did Plaintiff assert that he had tried three times to submit the grievance to the grievance officer and each time received it back with no response. In the R&R, Judge Williams discredited this testimony and concluded that Plaintiff was not thwarted but instead simply failed to properly exhaust his grievance at the institutional level before sending it to the ARB (Doc. 33, pp. 12-13).

In his objection to the R&R, Plaintiff briefly repeats that the contention that he submitted his grievance at the institutional level. He states that he "did in fact file or try

to file proper grievances" on this issue, and he believes Centralia Correctional Center "tried to cover up what happened to me by preventing me to file the proper grievances" (Doc. 37, p. 1). The Court rejects this assertion, for the same reasons articulated by Judge Williams – it is belied by the documentary record, including Plaintiff's own complaint, and the omission of any reference (in the counseling summaries or in what Plaintiff himself sent to the ARB) to three obstructed attempts to submit at the institutional level.

Moreover, assuming for the sake of argument that Plaintiff *did* submit the 1/31/16 grievance to a grievance officer after he received the counselor's response on February 5, 2016, he appealed to the ARB on February 22, 2016 – leaving insufficient time for a grievance officer to investigate the claims and issue a report, before Plaintiff took an appeal to the ARB. Freshly reviewing the evidence on the points to which Plaintiff specifically objected, the undersigned reaches the same conclusion as Judge Williams – Plaintiff did not submit the Bactrim/Stevens-Johnson grievance at the institutional level; he submitted it straight to the ARB, missing a step in the proper exhaustion chain.

The remainder of Plaintiff's objection tenders a basic fairness argument. Plaintiff says he made an "honest and good faith attempt to … follow the proper procedures," and the "dispute here shouldn't be a grievance procedure but should be the real issue that occurred," including the pain and long-term consequences Plaintiff has suffered

"due to the defendant's reckless decision" (Doc. 37, p. 1). Unfortunately, the PLRA requires more than a good faith try at exhausting. And Plaintiff was instructed in plain language about what specifically he needed to do – resubmit his grievance along with responses from the grievance officer and the CAO. He did not do so. Plaintiff failed to fully exhaust his administrative remedies before filing this lawsuit.

IV. **CONCLUSION**

The undersigned overrules Plaintiff's objection (Doc. 37), accepts and adopts in entirety Judge Williams' R&R (Doc. 33), grants Defendant Santos' exhaustion-based motion for summary judgment (Doc. 22), and **DISMISSES** this action <u>without</u> prejudice. *See Ford,* **362 F.3d at 400-01.** As no other claims remain herein, the Clerk of Court shall close this case.

IT IS SO ORDERED.

DATED January 24, 2018.

<u>s/ *Michael J. Reagan*</u>
Michael J. Reagan
United States District Judge